**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000556
10-MAY-2019
07:55 AM**

NO. CAAP-16-0000556

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
MONICA HATTORI, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-CR. NO. 15-1-2203)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Chan and Hiraoka, JJ.)

Defendant-Appellant Monica Hattori (**Hattori**) appeals from the Judgment of Conviction and Sentence (**Judgment**) entered by the Family Court of the First Circuit (**Family Court**)[1] on July 14, 2016. Hattori contends that:

    1. the Family Court erred in conducting a trial after orally dismissing the case with prejudice;

    2. there was no substantial evidence to support the conviction; and

    3. the Family Court erred in denying Hattori's motion for mistrial based on prosecutorial misconduct.

For the reasons explained below, we affirm the Judgment.

---

[1] The Honorable Fa'auuga L. To'oto'o presided.

**I.**

On December 24, 2015, Hattori was charged by complaint with Abuse of Family or Household Members, in violation of Hawaii Revised Statutes **(HRS)** §§ 709-906(1) and (5)(a) (2014).[2] The case was called for trial the morning of July 11, 2016. The State requested a continuance because the complaining witness **(CW)** was not present despite having been served and being ordered back during a prior court session. Hattori objected to the continuance and moved for dismissal. The Family Court initially denied the continuance, stating:

> THE COURT: All right. Based on the fact this is the second time State is not ready and the fact that the complainant was -- did you say, Ms. Prosecutor, complainant served but not here or?
>
> [Deputy Prosecuting Attorney **(DPA)**]: Served and ordered back, Your Honor.
>
> THE COURT: Okay. And ordered back. So case dismissed with prejudice. Any bail posted refund the bond discharged.

Immediately after the Family Court's oral ruling, the DPA informed the court:

> [DPA]: I'm sorry, Your Honor. Actually, our advocate had spoken with CW, and CW had a flat tire on the Pali and is on his way.
>
> THE COURT: All right. Counsel, wait, we'll see if that happens in the next 10 minutes.
>
> [DEFENSE COUNSEL]: Okay, thank you.
>
> THE COURT: Pass for now.

---

[2]     HRS § 709-906 states, in relevant part:

> (1)   It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4). The police, in investigating any complaint of abuse of a family or household member, upon request, may transport the abused person to a hospital or safe shelter.
>
> . . . .
>
> (5)   Abuse of a family or household member . . . [is a] misdemeanor[ ] and the person shall be sentenced as follows:
>
> > (a)   For the first offense the person shall serve a minimum jail sentence of forty-eight hours[.]

CW subsequently appeared and the State declared itself ready for trial. Hattori objected to the procedure, but also declared herself ready for trial. The Family Court scheduled motions in limine for that afternoon, and ordered CW to return to court Wednesday morning.[3]

Jury trial began on Wednesday, July 13, 2016. The jury heard testimony from CW and Hattori, among others, and was shown a photograph of CW's injuries. Both sides rested. The jury returned on July 14, 2016, to hear closing arguments and receive instructions. At 2:25 p.m. that day the jury returned a verdict of guilty as charged. This appeal followed.

## II.

### A. The Family Court did not abuse its discretion by commencing Hattori's jury trial.

Hattori contends that the Family Court lacked jurisdiction to conduct a trial once it orally granted her motion to dismiss the case. We disagree. "[T]he general rule is that the filing of a notice of appeal divests the trial court of jurisdiction over the appealed case." State v. Ontiveros, 82 Hawai'i 446, 448-49, 923 P.2d 388, 390-91 (1996) (brackets in original) (citation omitted). Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 4 provides, in relevant part:

> (b) Appeals in criminal cases.
>
> (1) TIME AND PLACE OF FILING. In a criminal case, the notice of appeal shall be filed within 30 days after entry of the judgment or order appealed from.
>
> . . . .
>
> (3) ENTRY OF JUDGMENT OR ORDER DEFINED. A judgment or order is entered within the meaning of this subsection when it is filed with the clerk of the court.

In this case the Family Court's oral statement granting Hattori's oral motion to dismiss was never reduced to an order or judgment filed with the clerk of the court. No notice of appeal was

---

[3] The court takes judicial notice that July 11, 2016 was a Monday. Hawaii Rules of Evidence (**HRE**) Rule 201 (2016).

filed. The Family Court retained jurisdiction over the case notwithstanding its oral order of dismissal. "[S]o long as a trial court retains jurisdiction, it 'always has the power to reexamine, modify, vacate, correct and reverse its prior rulings and orders.'" Chun v. Bd. of Trs. of Emps.' Ret. Sys. of State of Hawaii, 92 Hawai'i 432, 441, 992 P.2d 127, 136 (2000) (citations omitted).

The State argues that the Family Court exercised its inherent power to administer justice when new information – CW's having a flat tire on his way to court – was presented after the court announced the dismissal with prejudice of the case.[4] We agree. The family courts are divisions of the circuit courts. HRS § 571-3 (2006). HRS § 603-21.9 (2016) provides, in relevant part:

> The several circuit courts shall have power:
>
> (1) To make and issue all orders and writs necessary or appropriate in aid of their original or appellate jurisdiction;
>
> . . . .
>
> (6) To make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

A trial court's exercise of its inherent power to administer justice is reviewed for abuse of discretion. Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawai'i 494, 508, 880 P.2d 169, 183 (1994).

> The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant. The burden of establishing abuse of

---

[4] The Family Court did not articulate the basis for dismissing the case with prejudice, as would have been required under State v. Estencion, 63 Haw. 264, 269, 625 P.2d 1040, 1044 (1981) ("In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and the circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." (quoting Federal Speedy Trial Act, 18 U.S.C.A. § 3162(a)(1) (1969 & Supp. 1980))).

discretion is on appellant, and a strong showing is required to establish it.

State v. Deedy, 141 Hawai'i 208, 214, 407 P.3d 164, 170 (2017) (citations omitted).

In the proceeding below the Family Court orally dismissed the case during calendar call when the State was not ready to proceed because the CW was absent, and Hattori stated she was ready to proceed.  The State then learned that CW had a flat tire on his way to court and immediately informed the Family Court.  The court promptly heard motions in limine and addressed other pretrial matters, and set the jury trial to begin in two days.  Hattori does not contend that she was entitled to a dismissal under Hawai'i Rules of Penal Procedure (**HRPP**) Rule 48(b).[5]  Nor has Hattori argued that she was prejudiced in any way by the continuance.  We conclude under these circumstances that the Family Court did not abuse its discretion when it exercised its inherent power to administer justice once new information – CW's having a flat tire on his way to court – was presented after the Family Court orally announced the dismissal of the case but before any written order or judgment was entered.

B.     **There was substantial evidence to support Hattori's conviction.**

When reviewing the sufficiency of evidence on appeal, we apply the following deferential standard of review:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction;

---

[5]     HRPP Rule 48 provides, in relevant part:

> (b) By court.  Except in the case of traffic offenses that are not punishable by imprisonment, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months:
>
> > (1)   from the date of arrest if bail is set or from the filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made[.]

> the same standard applies whether the case was before a judge or jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Kalaola, 124 Hawai'i 43, 49, 237 P.3d 1109, 1115 (2010) (brackets in original) (citations omitted). "'Substantial evidence' . . . is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Id. (citation omitted).

During trial Hattori admitted that she hit CW, but claimed it was in self-defense. The burden was on the State to disprove the facts Hattori introduced to support her justification defense. State v. Arakawa, 101 Hawai'i 26, 36, 61 P.3d 537, 547 (App. 2002) (citation omitted). "The prosecution disproves a justification defense beyond a reasonable doubt when the [jury] believes the prosecution's case and disbelieves the defendant's case." State v. Jhun, 83 Hawai'i 472, 483, 927 P.2d 1355, 1366 (1996) (citations omitted). The jury was given the following instruction, which Hattori does not challenge:

> Self-defense is a defense to the charge of Abuse of Family or Household Members. The burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justified. If the prosecution does not meet its burden, then you must find the defendant not guilty.
>
> The use of force upon or toward another person is justified if the defendant reasonably believes that force is immediately necessary to protect herself on the present occasion against the use of unlawful force by the other person. The reasonableness of the defendant's belief that the use of protective force was immediately necessary shall be determined from the viewpoint of a reasonable person in the defendant's position under the circumstances of which the defendant was aware or as the defendant reasonably believed them to be. The defendant may estimate the necessity for the use of force under the circumstances as she reasonably believes them to be when the force is used without retreating, surrendering possession, doing any other act that she has no legal duty to do, and/or abstaining for any lawful action.
>
> "Force" means any bodily impact, restraint, or confinement, or the threat thereof.

"Unlawful force" means force which is used without the consent of the person against whom it is directed and the use of which would constitute an unjustifiable use of force. A person cannot consent to the infliction of death, serious bodily injury, or substantial bodily injury.

"Bodily injury" means physical pain, illness, or any impairment of physical condition.

Self-defense is not available for the offense of Abuse of Family or Household Members if the prosecution proves that:

(1)   The Defendant was reckless in believing she was justified in using force against the other person; or

(2)   The Defendant was reckless in acquiring or failing to acquire any knowledge or belief which was material to the justifiability of her use of force against the other person.

During the trial Hattori and CW both testified that they were arguing at a bus stop. CW testified that he told Hattori to get away or he was going to call the police. He started walking to his grandmother's house, where he was living. Hattori followed him. When he got to his grandmother's house, he "told everybody call the cops." He went to his room. Hattori went into the house and stood in the door to CW's room. CW testified: "I got to force my way out of the room get to the parlor and tell everybody call the cops." He demonstrated how he "move[d] [Hattori] to the side and [got] out of the door." CW testified that Hattori followed him to the parlor,

Then maybe like one good 10, 20 minutes she clawed my face. Started just swearing and yelling at me all kine different stuff and just kept, I don't know, just tied together.

Q.   She was what, could you repeat yourself?

A.   Tied in together, you know when you're like this trying to fight somebody off.

Q.   Okay.   So was she -- did she swing at you?

A.   Yes.

Q.   How did she do that?

A.   First she clawed my face then she just started swinging wild.

CW authenticated State's Exhibit 3, a photograph of scratches on CW's face that he said were made by Hattori's fingernails. CW blocked Hattori's swings with his hands but Hattori connected once, causing a bruise on CW's eye. CW "pushed [Hattori] backwards" but denied punching or kicking her.

Hattori testified that she and CW were arguing from the bus stop to CW's grandmother's house, where they were both staying. CW went into the house. Hattori followed him. They went to CW's room, both arguing, yelling and cursing. Hattori shut the door. CW choked and punched her. Hattori testified:

> Q. Did he hit or choke you first or did you hit or choke or hit him first?
>
> A. He hit me first.
>
> Q. Okay. And when you hit him back why did you hit him back?
>
> A. 'Cause I was scared.
>
> . . . .
>
> Q. Okay. And you hit him to try to get him off of you?
>
> A. Yes.
>
> Q. Because you were scared?
>
> A. Yes.

Hattori testified that she was scared because CW had punched her in the mouth before, with a closed fist, knocking out her two front teeth. She showed the jury the inside of her mouth where the teeth were missing. Hattori admitted scratching CW's face while in his room. CW left his room and Hattori followed him into the living room. Once they got to the living room, they continued arguing but CW did not hit her. Hattori testified:

> Q. Okay. And then you went out into the living room?
>
> A. Yes.
>
> Q. Okay. Now, at some point did you hit him again?
>
> A. Yes.

> Q.  And when did you hit him again?
>
> A.  In the living room.
>
> Q.  Okay.  And why did you hit him again?
>
> A.  'Cause he already hit me in the room.

Hattori admitted she probably inflicted the scratches on CW's face shown in State's Exhibit 3.  She felt like the force she used was necessary.

It is evident from the jury's verdict that they believed CW and did not believe Hattori.  "[T]his court will not attempt to reconcile conflicting evidence, or interfere with a jury decision based on the credibility of witnesses or the weight of the evidence."  State v. Yamada, 116 Hawai'i 422, 442, 173 P.3d 569, 589 (App. 2007) (citations omitted).  Viewing the evidence in the light most favorable to the State, Kalaola, 124 Hawai'i at 49, 237 P.3d at 1115, there was substantial evidence adduced at trial to support the jury's conclusion that Hattori's actions were not justified by self-defense.

## C.  The Family Court did not err in denying Hattori's motion for mistrial

During cross-examination the DPA asked Hattori the following questions:

> Q.  So after they called the police you left, correct?
>
> A.  Yes.
>
> Q.  You ran away from the house.  Did you call the police?
>
> A.  No.
>
> Q.  Did you wait on the side of the road try [sic] to flag them down?
>
> A.  No.
>
> Q.  Did you try and go to the police station and tell them that he hit you first?
>
> A.  No.
>
> Q.  So you're saying -- your testimony is that even though you're saying that he hit you first, you didn't wait for the police, correct?

9

A.  Um-hum.

Q.  You didn't report it to the police, correct?

A.  Correct.

Q.  And you stayed at the house even though you claim that you were scared of him, correct?

A.  Yes.

Q.  And when they told you that the police came -- were coming, you didn't think that you would stay and tell them that you got injured?

[DEFENSE COUNSEL]:  Objection, Your Honor.  May we approach?

THE COURT:  Overruled.  Sustained.

[DEFENSE COUNSEL]:  Objection, Your Honor, I'm going to move for a mistrial with that question.

THE COURT: Overruled.

[DEFENSE COUNSEL]: She's commenting on the --

THE COURT: I'm sustaining the objection.

[DEFENSE COUNSEL]:  Okay.  And I move for a mistrial.

THE COURT:  Denied.  Ladies and gentlemen, disregard that last question and response answer from the defendant.

Hattori contends that the Family Court erred in not granting her a mistrial because of what she claims was prosecutorial misconduct.

> The denial of a motion for mistrial is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion.  The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.

State v. Abella, No. CAAP-16-0000004, 2019 WL 1306435, at *4 (Haw. Ct. App. Mar. 22, 2019) (citing State v. Plichta, 116 Hawai'i 200, 214, 172 P.3d 512, 526 (2007) (quotation marks and other citations omitted).  Abella is dispositive.  In that case witnesses testified that they saw the victim (Higa) falling to the ground and Abella (the defendant) next to the victim, kicking or hitting Higa in the head.  Abella left the scene.  He later returned and started to hit Higa in the head again.  Abella again left the scene, but was arrested nearby.

At trial, Abella testified that he was walking in downtown Honolulu when a man, later identified as Higa, approached him, asked him if he had a problem, and punched him twice. Abella further testified that he hit back in self-defense before three additional men joined the fray. After the fight, Abella walked away. On cross-examination the State asked Abella why he did not report Higa's threat and punches to the police after he walked away. Id. at *9-*10. Abella objected. The State withdrew the question. The court gave a prompt curative instruction. On Abella's appeal from a conviction, we held:

> Here, the State's cross-examination of Abella pertained to his actions prior to being detained by police. It addressed Abella's testimony that he had been hit first and whether he had sought to report the matter to the police. The State's questions sought to impeach Abella's self-defense argument, rather than provide substantive evidence of his guilt.

Id. at *10. In this case, as in Abella, the prosecution's cross-examination about whether the defendant reported the complaining witness to the police sought to impeach the defendant's self-defense argument, rather than provide substantive evidence of the defendant's alleged guilt.

In Abella we also noted:

> Even if the State's questioning was improper, the Circuit Court took immediate action by instructing the jury to disregard the questions about whether Abella reported any incident to the police and any of his responses to those questions. In short, the Circuit Court provided a prompt curative instruction.

Id. at *10 (citation omitted). In this case, as in Abella, the trial court gave the jury a prompt curative instruction. "A jury is presumed to follow a court's instructions precisely because a jury is likely to perceive a court's statements of the law as the accurate law to apply." Id. (quoting State v. Souza, 142 Hawai'i 390, 404, 420 P.3d 321, 335 (2018)). We hold that there was no prosecutorial misconduct in this case and, even if there had been, the Family Court took prompt, appropriate curative action. There was no error in denying Hattori's motion for mistrial based on alleged prosecutorial misconduct.

11

## III.

For the foregoing reasons, the Judgment of Conviction and Sentence entered by the Family Court of the First Circuit on July 14, 2016, is affirmed.

DATED: Honolulu, Hawai'i, May 10, 2019.

On the briefs:

Jacob G. Delaplane,
for Defendant-Appellant.

Sonja P. McCullen,
Deputy Prosecuting Attorney,
City and County of Honolulu
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Keith K Hiraoka

Associate Judge

12